ABRAHAM V. VAN FLEET AND JOHN T. BIRD, ESQS.,
VICE-CHANCELLORS.

---

NICHOLAS JORALEMON'S ADMINISTRATOR

*v.*

ANNIE E. VAN RIPER AND EDWIN J. VAN RIPER.

1. Where a power of sale, given by a will to executors, of necessity implies a trust, confidence or reliance in the individuals who are named as the executors, such power cannot be exercised by another than those individuals; but where the power is given to an executor *ratione officii*, it may be exercised by any one who may succeed to the office.

2. Where a testator, with the design of providing a fund for the payment of his debts and preserving a portion of his personal property from sale,

299

authorizes his executors to sell his real estate, and adds to the authority the words "for such price as in their judgment shall be right," those words will be held not to impose such a special trust and reliance in the individuals named as executors as to preclude the exercise of the power by the adminis-trator *de bonis non cum testamento annexo.*

On bill for construction of will.

*Mr. Howard W. Hayes,* for the complainant.

THE CHANCELLOR.

Nicholas Joralemon died at Belleville, in Essex county, in this state, on the 4th day of November, 1881, seized of real estate in that county. He left a will, which bears date on the 15th of September, 1881, in and by which he bequeathed to his wife the use of his household furniture for her life, and devised and bequeathed to her, for life, the residue of his estate, after the payment of his debts. After the death of Mrs. Joralemon, the estate in her use is given to a nephew, Richard Joralemon, and a niece, Annie Joralemon, in equal shares. Mrs. Joralemon and the nephew Richard were appointed, respectively, executrix and executor of the will.

The second paragraph of the will is in the following words:

" *Second.* I hereby order my just debts to be paid out of the remainder of my personal property, and I hereby authorize and direct my executors herein-after named to sell and dispose of my personal property either at public or private sale, and apply the proceeds thereof toward the payment of my said debts ; and if the said personal estate shall be insufficient, then I authorize my said executors to sell so much of my real estate, either at public or private sale, for such price as in their judgment shall be right, as shall be sufficient to pay the remainder of my said debts, and to give good and sufficient deeds for the same."

The executrix and executor named, proved the will, and received letters testamentary. On September 29th, 1883, the orphans court of Essex county removed them from office, and thereupon the complainant was appointed administrator *de bonis non cum testamento annexo.* In December of the same year, Richard Joralemon died intestate, leaving his sister, Annie, his

sole heir-at-law. In January, 1886, this sister married the defendant, Edwin J. Van Riper, and in July of the same year, the widow of Nicholas Joralemon, Mary E. Joralemon, died.

The complainant has made Annie E. Van Riper and her husband the defendants to this suit. He alleges that the personal estate of Nicholas Joralemon is insufficient to pay his debts, and prays that he may be instructed whether he may exercise the power of sale, which was conferred upon the executrix and executor, by the second paragraph of the will.

The defendants do not answer.

Obviously, the scheme of the testator was to preserve his household furniture from sale, primarily for the use of his widow. He evidently anticipated that his debts would exhaust his personal estate, exclusive of the furniture ; feared that the furniture might also be applied to their satisfaction, and determined to make all possible provision by his will to protect it. With this end in view, he, in effect, directed his executors first, to sell the residue of his personal estate and then, if the proceeds of such sale should not be sufficient to pay his debts, to sell, either at public or private sale, as much of his real estate as should be required to complete their payment, " for such price as in their judgment shall be right."

The single question presented is whether the authority to sell is necessarily connected with, and inseparable from, a personal trust and confidence in the executors.

The rule is well settled in this state, that where a power of sale, given by a will to executors, of necessity implies a trust, confidence or reliance, in the individuals who are named as the executors, such power cannot be exercised by another than those individuals ; but where the power is given to an executor *ratione officii*, it may be exercised by any one who may succeed to the office. *Chambers* v. *Tulane, 1 Stock. 146 ; Weimar* v. *Fath, 14 Vr. 1 ; Naundorf* v. *Schumann, 14 Stew. Eq. 14 ; Giberson* v. *Giberson, 16 Stew. Eq. 116 ; Drummond* v. *Jones, 17 Stew. Eq. 53.*

I do not think that it was the intention of the testator to limit the power of sale to the persons whom he named as his execu-

tors.   The words, "for such price as in their judgment shall be right," I conceive to be incidentally connected with the power as an injunction to good faith, and the avoidance of a sacrifice of the property.   They command the exercise of an ordinary business judgment in fixing the fair price of property, and such command imposes no duty additional to that to which the law would hold the executors in its absence.   They simply direct a conscientious discharge of the duty which the law requires.

The testator's design, to authorize a sale for the purpose of paying his debts and thus to protect specific property from a disposition to which he thought it might otherwise be subjected, is so prominent that I cannot comprehend that he could have meant to imperil its accomplishment by making it depend upon the ability of his widow and nephew to exercise a mere business judgment at the sale.

I am of opinion that the power of sale was given to the executors *ratione officii*, and that it may be exercised by the complainant so far as may be necessary to pay the lawful demands of testator's creditors.